IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

NORMA VANN,                          )
                                     )
                 Plaintiff,          )
                                     )
                                     )   Case No. CIV-19-150-JFH-KEW
                                     )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
                 Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Norma Vann (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 48 years old at the time of the decision. She has a high school education and past relevant work as a server, labeler, and driver. Claimant alleges an inability to work beginning on December 1, 2015, due to limitations resulting from physical and mental impairments.

### Procedural History

On February 15, 2016, Claimant filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 27, 2018, ALJ Lantz McClain conducted a hearing in Fayetteville, Arkansas, at which Claimant was present

3

and testified. On July 17, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on March 15, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by making improper "Part B findings" at step three of the sequential evaluation when considering Listings 12.04 and 12.06. Specifically, she contends substantial evidence shows her ability to interact with others and to adapt and manage herself is more than moderately limited.

## Consideration of Listings 12.04 and 12.06

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease, status post, left knee surgery, diabetes mellitus, obesity, depression, anxiety, and borderline intellectual functioning. (Tr. 15). He determined Claimant could perform sedentary work with additional limitations. Claimant could occasionally lift and/or carry ten pounds,

4

frequently lift and/or carry up to ten pounds, stand and/or walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. Claimant could occasionally climb stairs or ramps, balance, stoop, or crouch, but she should never kneel or crawl. She was limited to simple, repetitive tasks, and she was able to relate to co-workers and supervisors only superficially. Claimant was not able to work with the public. (Tr. 18).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of stuffer and assembler, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 26-27). As a result, the ALJ concluded Claimant was not under a disability from December 1, 2015, her alleged onset date, through June 30, 2017, the date last insured. (Tr. 27).

Claimant contends the ALJ's step-three determination that she does not meet the criteria of Listing 12.04 and Listing 12.06 is not supported by substantial evidence. She asserts the ALJ failed to fully consider the evidence when he evaluated the "paragraph B" criteria of the Listings and determined she was only moderately limited in the functional areas of interacting with others and adapting and managing oneself.

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments

that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Claimant bears the burden of showing that her impairments meet or equal a listed impairment. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy the "paragraph B" criteria of Listing 12.04 (Depressive, bipolar and related disorders) and Listing 12.06 (Anxiety and obsessive-compulsive disorders), an impairment must result in an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning []": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B); 12.06(B).

The ALJ discussed the "paragraph B" criteria in the decision. After setting out the domains of functioning, he stated that "[a] marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." Additionally, he stated that "[a]n extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis." The ALJ discussed each area of functioning and determined Claimant's "mental impairments did not cause at least two 'marked' limitations or one 'extreme' limitation," and "the 'paragraph B' criteria were not satisfied."

6

(Tr. 17).[2] He ultimately determined that "[t]he severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.11." (Tr. 16).

Claimant contends that in determining that she was moderately limited in interacting with others, the ALJ improperly considered her testimony that she did not "go out" of her house and that people did not come to see her. Claimant testified she did not want to "deal" with people, she gets "irritated[,]" and she wants "people to leave [her] alone." Claimant testified she even got "mad" at her mother for asking her "to do something simple like sweep the bathroom floor." (Tr. 50).

Regarding her ability to interact with others, the ALJ determined:

> The claimant testified at the hearing that she does not want to do anything and she wants to keep to herself because of her depression and anxiety. Parkside records on September 12, 2015 stated the claimant had poor relationships, and impaired social judgment (Exhibit 1F, pages 10, 12). The claimant told Dr. LaGrand that she has no desire to do anything or have contact with anyone. She said she does okay if left alone, but when questioned repeatedly she reported she becomes outraged. However, the claimant was living with her parents and her daughter at the time of Dr. LaGrand's examination, and her parents helped the claimant care for herself and her daughter. Dr. LaGrand observed the claimant as tearful, but cooperative, with a pleasant attitude (Exhibit 6F). The

---

[2]    The ALJ also determined the "paragraph C" criteria were not satisfied. Because Claimant does not challenge the ALJ's conclusion regarding the "paragraph C" criteria, this Court will not address it.

claimant has a moderate limitation in interacting with others.

(Tr. 17).

Other than her own testimony, Claimant points to no other evidence that the ALJ's finding of a moderate limitation in interacting with others is unsupported by the record. The ALJ described Claimant's testimony regarding her mental impairments and limitations in the decision. (Tr. 17, 18-19). He ultimately determined that her statements about the intensity, persistence, and limiting effects of her symptoms were not fully credible (Tr. 19, 23), and Claimant does not challenge the ALJ's decision in this regard. No error is found in the ALJ's determination that Claimant is moderately limited in interacting with others.

Claimant also challenges the ALJ's reasons for minimizing her limitations in her ability to adapt and manage herself. Regarding this functional area, the ALJ concluded:

> The claimant has a history of suicidal threats and she has coped with chronic pain (Exhibit 1F, page 8). There is evidence of hallucinations. In September 2015, the record showed her agitated, with labile affect, and she had little to no insight (Exhibit 1F, page 11). She has episodes of mood swings (see e.g. Exhibit 23F, page 3); however, on January 17, 2018, the claimant was having no suicidal or homicidal ideation, she was able to demonstrate good judgment and reason, without hallucinations, abnormal affect or abnormal behaviors during an objective examination (Exhibit 20F, page 2). The claimant told Dr. LaGrand she could probably live on her own with some assistance from family and friends. The claimant reported lack of motivation. She alleged her problems are worse if someone makes her mad, she is upset, or she feels overwhelmed. However, the claimant

8

helps her symptoms by reading the Bible, as well as getting adequate sleep (Exhibit 6F). There is a moderate limitation in adapting or managing oneself.

(Tr. 17).

Claimant argues the January 2018 examination relied upon by the ALJ was not conducted by a mental health provider, but it was instead an examination by Claimant's diabetes doctor. However, the January 2018 examination was associated with Claimant's treatment through the Wilma P. Mankiller Health Center, and the mental examination of Claimant was conducted by Talara Taylor, ARNP. (Tr. 628-34). The treatment record reveals Ms. Taylor examined Claimant for general follow up for the evaluation/management of her chronic diseases. She noted Claimant's past mental history of bipolar disorder, psychosis NOS, and suicide risk. (Tr. 628). She referenced that Claimant currently did not suffer from suicidal or homicidal ideation, had no complaints that day, and her condition was controlled. (Tr. 629). Ms. Taylor also performed a mental examination of Claimant, which revealed Claimant was oriented to person, place, and time and demonstrated good judgment and reason, without hallucinations, abnormal affect, or abnormal behaviors. *Id*. This Court finds no error for the ALJ's reliance on Ms. Taylor's mental examination. Claimant does not point to any other evidence from the same time period that is contrary to Ms. Taylor's examination findings.

Claimant next argues the ALJ inappropriately considered her report to consultative psychologist Denise LaGrand, Ph.D., that she could probably live alone with assistance from family and friends. She contends her hearing testimony demonstrates serious limitations in her abilities to adapt and manage herself, and it was unreasonable for the ALJ to rely on her report to Dr. LaGrand that she could probably live alone. However, as discussed above, other than her own testimony, Claimant points to no evidence showing the level of marked limitations required by the Listings in this area of functioning, nor does Claimant challenge the ALJ's findings regarding her subjective complaints and symptoms.

Claimant further argues the ALJ's reliance on her coping mechanisms of reading the Bible and getting enough sleep to help her symptoms required he account for them in the RFC and hypothetical questions to the VE. However, the use of coping mechanisms by Claimant was not a work-related functional limitation; it was merely a piece of evidence considered by the ALJ at step three when concluding Claimant suffered from only moderate limitations in her ability to adapt and manage herself. *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s)at steps 2 and 3 of the sequential evaluation process.").

Through her arguments, Claimant generally attempts to challenge the reasons given by the ALJ for his findings of her moderate functioning in the areas of interacting with others and adapting and managing herself without pointing to medical evidence that was disregarded by the ALJ. She points to no findings by mental health professionals that indicate "marked" or "extreme" deficits in these functional areas. Here, the ALJ specifically discussed the "paragraph B" criteria for the challenged Listings, determined the criteria were not satisfied, and concluded Claimant's mental impairments did not meet or medically equal the criteria of the Listings. (Tr. 16-18); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("[F]or a claimant to show that [her] impairment matches a [L]isting, it must meet *all* the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original). No error is attributed to the ALJ's consideration of Listings 12.04 and 12.06 at step three.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and

11

Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of August, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE